UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY PINSON; ELMER MORENO;
ERNESTO ZARAGOSA-SOLIS III; KEVIN
MASA; BRUCE ALTENBURGER; JAYSON
MCNEIL; ESTHER WELSH,

                              Plaintiffs,

                -against-

FEDERAL BUREAU OF PRISONS,

                              Defendant.

24-CV-1312 (LTS)

ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiffs Jeremy Pinson, Elmer Moreno, Ernesto Zaragosa-Solis III, Kevin Masa, Bruce

Altenburger, Jayson McNeil, and Esther Welsh bring this action under the court's federal

question jurisdiction, seeking declaratory and injunctive relief against the Federal Bureau of

Prisons ("BOP"). Pinson, Moreno, Zaragosa-Solis, Masa, Altenburger, and McNeil are currently

incarcerated in various BOP facilities.[1] Welsh is currently a non-incarcerated resident of Rego

Park, Queens County, New York.

## BACKGROUND

Plaintiffs assert claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971),

for violations of their rights under the First Amendment, as well as claims under the Freedom of

Information Act ("FOIA") and the Privacy Act ("PA"). The following allegations are taken from

the complaint. The incarcerated Plaintiffs were contacted by the Marshall Project, a New York-

based online media organization, to participate in the collection of information for a story on the

---

[1] Pinson and Altenburger are incarcerated in Allenwood, Pennsylvania; Moreno in
Tucson, Arizona; Zaragosa-Solia in Coleman, Florida; Masa and McNeil in Terre Haute, Indiana.

Prison Rape Elimination Act ("PREA") and BOP's failure to protect people in its custody from sexual assault. BOP officials began monitoring Plaintiffs' communications with the Marshall Project. Shortly after the incarcerated Plaintiffs began providing information to the Marshall Project, each of them was threatened by BOP staff with "retaliatory transfers and long-term segregation." (ECF 1, at 4.) When the incarcerated Plaintiffs declined to stop cooperating with the Marshall Project, they were placed under investigation and "scattered across the country." (*Id.*) Plaintiff Welsh's communications with Plaintiff Pinson were being rejected "from multiple BOP facilities in multiple states without notice, an opportunity to be heard, or an opportunity to appeal." (*Id.*) BOP officials have transferred Pinson to its Secure Administrative Unit, and "despite warnings that she not be housed alone . . . placed her in solitary confinement" despite previous promises not to do so.[2] (*Id.*)

Plaintiffs further allege that "[a]ll FOIA/PA requests mailed to BOP by [P]laintiffs to get information for [the Marshall Project reporters] were ignored by BOP." (*Id.*)

## DISCUSSION

Generally, Rule 20 of the Federal Rules of Civil Procedure allows multiple plaintiffs to join in one action if (1) they assert any right to relief arising out of the same occurrence or series of occurrences, and (2) if any question of law or fact in common to all plaintiffs will arise in the action. *See, e.g.*, *Kalie v. Bank of Am. Corp.*, No. 12-CV-9192 (PAE), 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit'" (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979))).

---

[2] Pinson identifies as transgender and uses female pronouns. (*See id.* at 4.)

Courts have the authority to deny joinder, or to order severance under Rule 21 of the Federal Rules of Civil Procedure, even without a finding that joinder is improper, if joinder "will not foster the objectives of the rule, but will result in prejudice, expense or delay." Wright & Miller, 7 Fed. Prac. & Proc. § 1652 (3d ed.) (citations omitted); *see Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) ("[Fed. R. Civ. P. 21] authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance."); *Ghaly v. U.S. Dep't of Agric.*, 228 F. Supp. 2d 283, 292 (S.D.N.Y. 2002) (noting that "district courts have broad discretion to decide whether joinder is appropriate, even when the requirements of Rule 20(a) have been met" (citation omitted)).

In determining whether to deny joinder or order severance of parties, courts consider the requirements of Rule 20 and additional factors, "including (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (considering motion to sever under Fed. R. Civ. P. 20 and 21); *see also Laureano v. Goord*, No. 06-CV-7845 (SHS) (RLE), 2007 WL 2826649, at *8 (SD.N.Y. Aug. 31, 2007) (When considering severance, "courts should be guided by 'considerations of convenience, avoidance of prejudice to the parties, and efficiency.'" (quoting *Hecht v. City of New York*, 217 F.R.D. 148, 150 (S.D.N.Y. 2003))).

While they assert the same claims, each Plaintiff has their own unique circumstances, including whether they are incarcerated, where they are incarcerated, the specific circumstances of their incarceration and their classification within the BOP, their personal complaints regarding the nature of the alleged retaliation and the individuals responsible for such retaliation, and the circumstances surrounding any FOIA requests that may have been submitted. Each Plaintiff will

ultimately need to allege their own set of facts detailing the communications with the Marshall

Project that they allege are protected by the First Amendment, how they were retaliated against,

and, to the extent they submitted a FOIA request, how they exhausted administrative procedures

prior to coming to court. It is therefore not clear that their claims arise out of the same

occurrences or that questions of law or fact in common to all of them will arise. *See* Fed. R. Civ.

P. 20.

      Even if Plaintiffs in this action were properly joined, however, the Court finds that the

practical realities of managing this *pro se* litigation involving multiple incarcerated and non-

incarcerated Plaintiffs militate against adjudicating the Plaintiffs' claims in one action. As *pro se*

litigants, each Plaintiff may appear only on their own behalf; none may appear as an attorney for

the others. *See United States v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is

not licensed as an attorney 'may not appear on another person's behalf in the other's cause'"

(citations omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se*

means to appear for one's self, a person may not appear on another person's behalf in the other's

cause").

      In addition, Rule 11(a) of the Federal Rules of Civil Procedure requires that every

pleading, written motion, or other paper be signed by every party personally who is

unrepresented. During this action, each Plaintiff would therefore be required to sign any motion

or notice filed. But because of the transitory nature of confinement in particular federal BOP

facilities, from which an inmate could be transferred at any time, and because of security

concerns related to inmate correspondence and face-to-face communications, Plaintiffs would

have at best only a very limited opportunity to discuss case strategy, share discovery, or even

provide each other with copies of the motions and notices that they file with the Court. Further,

this limited opportunity for communication can result in piecemeal submissions, delays, and missed deadlines. *See, e.g.*, *Perkins v. City of New York*, No. 14-CV-3779 (WHP), 2014 WL 5369428, at *1 (S.D.N.Y. Oct. 20, 2014) (finding that multi-prisoner case should be severed under Fed. R. Civ. P. 21 into individual actions based on unwieldy complaint, security considerations, and plaintiffs' likely inability to jointly litigate the case because they were housed in different facilities or given limited opportunities to associate).

Based on these logistical issues, the Court concludes that allowing this case to proceed as a multi-plaintiff case would not be fair to the Plaintiffs and would not achieve judicial economy. Allowing each Plaintiff to proceed separately, on the other hand, would facilitate the fair and efficient disposition of the litigation. *See, e.g.*, *Lee v. Dep't of Corrs.*, ECF 1:20-CV-8407, 7 (GBD) (SDA) (S.D.N.Y. Nov. 9, 2020) (severing claims of 50 detainees who alleged that officials at Rikers Island were failing to protect them from COVID).

The Court will therefore sever this action into individual cases. Jeremy Pinson will proceed as the sole plaintiff in this action. The other six plaintiffs – Elmer Moreno, Ernesto Zaragosa-Solis III, Kevin Masa, Bruce Altenburger, Jayson McNeil, and Esther Welsh – will each be assigned a new case number.

A copy of the complaint (ECF 1) and this order will be docketed in each new case. Any corresponding IFP application will also be docketed in each new case.[3] The new cases will proceed independently from this point on. Once the new cases are opened, the Court will direct the plaintiffs who have not already submitted a signed IFP application and/or prisoner

---

[3] The Court has received IFP applications from Pinson, Zaragosa-Solis, and Moreno. None of the incarcerated Plaintiffs have submitted prisoner authorizations.

authorization to do so, or to pay the $405.00 in fees required to bring a civil action in this court.[4]

Plaintiffs will not be regarded as co-plaintiffs, except upon further order of the Court.[5]

## CONCLUSION

The Court severs the claims of all plaintiffs under Fed. R. Civ. P. 21. Jeremy Pinson will proceed as the sole plaintiff in this action.

The Clerk of Court is directed to open separate civil actions with new docket numbers for the following plaintiffs: Elmer Moreno, Ernesto Zaragosa-Solis III, Kevin Masa, Bruce Altenburger, Jayson McNeil, and Esther Welsh. A copy of the complaint (ECF 1), this order, and any corresponding IFP application should be docketed in each new case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.*

---

[4] Although the Second Circuit has not reached the issue, a majority of courts have held that the Prison Litigation Reform Act, 28 U.S.C. § 1915, requires each prisoner to pay a full filing fee, regardless of whether the prisoner has joined with others to file in one case or is proceeding as the sole plaintiff. *See, e.g.*, *Hagan v. Rogers*, 570 F.3d 146, 155 (3d Cir. 2009); *Boriboune v. Berge*, 391 F. 3d 852, 855 (7th Cir. 2004); *Hubbard v. Haley*, 262 F. 3d 1194, 1197 (11th Cir. 2001), *cert. denied sub nom. Hubbard v. Hopper*, 534 U.S. 1136 (2002); *Miller v. Annucci*, No. 18-CV-37 (CM) (S.D.N.Y. Feb. 27, 2018) (noting that *Hubbard*, *Hagan*, and *Boriboune* are "consistent with the Second Circuit's recognition that the PLRA was intended to deter the filing of frivolous lawsuits by prisoners," and that allowing prisoners to "split the cost of one filing fee between them would undermine the deterrent effect of the PLRA filing fee requirement" (quoting *Ashford v. Spitzer*, No. 08-CV-1036 (LEK) (RFT), 2010 U.S. Dist. LEXIS 147041, at *13 (N.D.N.Y. Mar. 16, 2010))). *But see In re Prison Litig. Reform Act*, 105 F.3d 1131, 1138 (6th Cir. 1997) (declaring in an administrative order that "any fees and costs that the district court or the court of appeals may impose shall be equally divided among all the prisoners"); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999) (holding that costs assessed under Section 1915(f) must be apportioned equally among prisoner plaintiffs). The Court requires that each prisoner pay a full filing fee – especially where, as here, there will now be multiple cases.

[5] The severance of Plaintiffs' claims into individual cases does not mean that their claims cannot be considered or tried together. If appropriate, the Court can deem the cases related or consolidate them. *See Hagan*, 570 F.3d at 165 n.11.

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to mail a copy of this order to each of the plaintiffs at the addresses listed on the docket.

SO ORDERED.

Dated:   April 15, 2024
         New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge